## Barker's Appeal and Hyndman's Appeal.

In a will where there is a devise to one for life, and, upon the death of the life tenant, a devise over to the testator's children then living or surviving, it refers to the children living at the testator's death, and the remainders are vested.

A decree of distribution of a decedent's estate sustained, upon the opinion of the lower court.

(Decided January 4, 1886.)

Appeals from a decree of the Orphans' Court of Allegheny County distributing a decedent's estate.   Affirmed.

Cited in Woelpper's Appeal, 126 Pa. 562, 17 Atl. 870; Thran v. Herzog, 12 Pa. Super. Ct. 551, 17 Lanc. L. Rev. 153; Miller's Estate, 19 Pa. Co. Ct. 129, 1 Dauphin Co. Rep. 375; Mowrer's Estate, 19 Lanc. L. Rev. 223; Patrick's Estate, 23 Pittsb. L. J. N. S. 261; Sterling's Estate, 7 Pa. Co. Ct. 226, 24 W. N. C. 495.

NOTE.—The rule is plain that estate over to survivors refers to those who are such at the time of the testator's death (Patrick's Estate, 162 Pa. 131,

The facts are stated by the court below as follows:

Henry Barker died testate in September, 1858, leaving to survive him his wife, Elizabeth Barker, and six children, George, Florence, Henry, Charles, Jesse, and Ida. He devised his real estate to his wife for life or during widowhood, and upon her death directed it to be divided into as many shares as there might be surviving children, and one more in case Ida should be one of the survivors, and gave one share to each surviving son and two to Ida. His wife and all the children survived him. She remained his widow until her death, on April 2, 1885. One of the sons, Henry Barker, who was dissipated and consumptive, was absent and unheard of for a period of seven years prior to his mother's death. He was unmarried and the presumption is he died intestate and without issue prior to her. All the other children died prior to their mother, intestate, unmarried, and without issue, with the exception that George Barker left a wife and two children, Jesse and Catharine, to survive him. On the 1st day of June, 1869, George, Florence, Henry, and Ida Barker, all of the children who then survived, with the widow, joined in a mortgage to the Mechanics' Savings Bank, upon a part of the real estate, on which they borrowed $4,000. It was subsequently foreclosed, the real estate sold by the sheriff and purchased by the bank. On March 30, 1871, they joined with it in conveying this real estate to William B. Hays for $22,000. Of this purchase money $10,000 was placed in the hands of Jonas R. McClintock, the executor, as belonging to the testator's estate, who paid the interest thereon during his lifetime to the widow. He having died prior to her, the Safe Deposit Company, of Pittsburgh, was appointed trustee under the will, and the money was paid by his executor to it, and this is the fund for distribution. It is claimed by counsel for Jesse Barker, grandson of the testator, that the remainders to his children were contingent; that, they having died before the devisee for life, he died intestate as to the reversion; and that the children of his son, George Barker, to wit, Jesse and Catharine, as heirs at law, or next of kin to the testator, are entitled to the fund.

---

29 Atl. 639; Johnson v. Morton, 10 Pa. 245; Ross v. Drake, 37 Pa. 373; Martin's Appeal, 185 Pa. 51, 39 Atl. 841) ; unless it clearly appears that the testator intended it to refer to a different period.    Woelpper's Appeal, 126 Pa. 575, 17 Atl. 870.

Opinion below, by OVER, J.:

The principal question for solution in construing this will is whether the period of survivorship, referred to in it, is the death of the testator or that of the life tenant. If the former, then, as all of his children survived him, they had a vested remainder in his real estate; and, if the latter, it was contingent, and defeated by their death prior to the life tenant. After giving his wife an estate for life or widowhood, the testator disposed of his real estate as follows: "Should my wife, Elizabeth, however, be called to her final account before our youngest child arrives at a majority, or after all my children have arrived at legal age, I do further direct that my real estate, that already in possession, as well as any that may be hereafter acquired, be divided into as many shares as there may be surviving children, and one share more in case my daughter Ida should be one of the survivors, the same to be divided and appropriated under the direction of the proper legal authorities, as follows: One share to each surviving son and two shares to my daughter, Ida, if still surviving." The disposition of the real estate is the same, whether she died before the youngest child arrived at majority or after all the children became of legal age. And as there is nothing predicated upon either contingency, the thought of the testator would be more properly expressed by omitting the reference to the ages of the children. If this be done and the necessary changes of a few words be made, this part of the will would read as follows: "When my wife, Elizabeth, shall be called to her final account, I do further direct that my real estate . . . be divided into as many shares as there may be surviving children," etc. The word "surviving" is synonymous here with living; and it has been held in several cases that where, upon the death of the life tenant, the devise over was to the testator's children then living, that it meant those living at the testator's death, and that the remainders were vested. Womrath v. McCormick, 51 Pa. 504; Manderson v. Lukens, 23 Pa. 31, 62 Am. Dec. 312; Crawford v. Ford, 7 W. N. C. 532.

And, under these authorities, this clause of the will seems to make them vested. Moreover, the old English rule was that words of survivorship, in the absence of a manifest intent that they should be otherwise applied, would be referred to the death of the testator. Barnes v. Provoost, 2 Am. Lead. Cas. Sharswood & B.'s ed. 297. This rule does not now prevail in Eng-

land, but it is still in force in this state. Johnson v. Morton, 10 Pa. 245; Ross v. Drake, 37 Pa. 375.

It is evident that there is nothing in this clause of the will showing a manifest intent that the word "surviving" should be otherwise applied, and, therefore, it refers to the death of the testator, unless such an intent appears elsewhere. The next clause makes the same disposition of the reversion in case she ceases to be his widow, as is made upon her death, and there is nothing in it showing such an intent. But in the succeeding one, the testator provides as follows: "I further direct that, at any time, with the full and free assent of my wife, Elizabeth, on petition of the whole number of our children, by themselves or guardian, to the proper court, the said orphans' court may order a sale of any and all my said estate, the proceeds of which shall be vested under the direction and approval of said court, to inure to the benefit of my said wife during her lifetime, and thereafter to be divided into the number of shares already indicated, and appropriated in the proportion already recited." It may be argued that this clause is inconsistent with an intent to give the children vested remainders, as, if vested, those of age would have power to sell without such an order. But, as the testator had previously given them a remainder in fee, it seems to be an attempt to restrain its alienation, except in the manner specified, before it vested in possession, and, if so, is void. Hall v. Tufts, 18 Pick. 455; Reifsnyder v. Hunter, 19 Pa. 41.

It seems, also, to be in conflict with the 1st section of the act of April 3, 1851 (Purdon's Digest, 429, pl. 115), which gives the orphans' court jurisdiction to decree a sale upon the petition of a life tenant alone, without the assent of the remaindermen, and would be void for that reason.

These are the only portions of the will which seem to have any bearing on the question, and, as they do not show a manifest intention that the survivorship should refer to the death of the life tenant, it follows that it refers to the death of the testator, and that the remainders then vested. But even if this conclusion be not correct, the children of George Barker would not take the fund as the next of kin or heirs at law of the testator. If the remainders were contingent, as all the children died before the life tenant there was an intestacy as to the reversion, and it descended to the testator's heirs at law. They are the persons upon whom the law casts the inheritance at the death of

the ancestor (Bouvier, Law Dict.), and would be his children who would take the reversion by inheritance if they did not under the will (Manderson v. Lukens, 23 Pa. 31, 62 Am. Dec. 312); the only difference being that it would be in equal shares, while under the will his daughter Ida takes a double portion.

The testator having left six children surviving him, the reversion is to be divided into seven equal shares, Ida to receive two and each of the other children one. The will does not convert the real estate, and, as Charles and Jesse died unmarried and intestate, before its conversion, their interests, two sevenths of the whole, descended as realty and vested, subject to their mother's life estate, in their surviving brothers and sisters, four in number. Each of them would inherit two twenty-eighths, which, with their interests under the will, would make their total interests in the reversion as follows: George Barker, S. C. Barker, and Henry Barker, each six twenty-eighths, and Ida Barker ten twenty-eighths. The mortgage and sale by them of the real estate converted these interests into personalty; and the fund for distribution being the proceeds of the sale, it must be distributed as such. The title to it, therefore, is in their administrators, to whom it is to be distributed in the above proportions.

From the decree entered in conformity with this opinion, Jesse Barker and James B. Hyndman, as administrator of George Barker, deceased, severally appealed.

*Thomas C. Lazear,* for appellants.—A mere sale of real estate does not, *ipso facto,* operate to convert the proceeds into personaalty in all cases. Large's Appeal, 54 Pa. 383; Wilson v. Hamilton, 9 Serg. & R. 424.

And a sale of a minor's land for the payment of the debts of his deceased father does not work an equitable conversion of the surplus. McCarthy's Estate, 11 Phila. 85. See also Lloyd v. Hart, 2 Pa. St. 473, 45 Am. Dec. 612; Pennell's Appeal, 20 Pa. 515.

Where land is sold by order of the orphans' court, and there is any surplus of money after satisfying the purpose for which the sale is made, such surplus is always regarded and treated as real estate. Cooke v. Dealey, 22 Beav. 196; Jermy v. Preston, 13 Sim. 356.

*J. McF. Carpenter,* for appellee.—The law favors a remainder rather than an executory devise, and a vested rather

than a contingent remainder.    Barnes v. Provoost, 2 Am. Lead. Cas., Sharswood & B.'s ed. 283.

An unpossessed estate is vested if it is certain to take effect in possession by enduring longer than the precedent estate; any additional contingency destroys its vested character.    Manderson v. Lukens, 23 Pa. 31, 62 Am. Dec. 312; Leighton v. Leighton, 58 Me. 63; Smith v. West, 103 Ill. 332.

The mere fact that the remainder-man's right to enjoy the estate in possession depended upon his surviving the life tenant did not make the estate contingent.    In Blanchard v. Blanchard, 1 Allen, 223, there was a devise to a wife for life, and all the property, both real and personal, that may be left at the death of my wife, to be divided equally amongst (here follow the names of five children) : Provided, if any of the last named five children die before my wife, then the property to be equally divided between the survivors, except they should leave issue; in that case to said issue, etc.    It was held that the estate was vested in the children named, and that the proviso raised a condition subsequent which might devest their estate.

In order that a subsequent contingency may have the effect of devesting a vested remainder, it must be clearly expressed in the writing, or the intent must be plain.    Lantz v. Trusler, 37 Pa. 482.

By a careful consideration of a number of cases cited in Barnes v. Provoost, 2 Am. Lead. Cas., Sharswood & B.'s ed. 283, and especially Johnson v. Morton, 10 Pa. 245, and Ross v. Drake, 37 Pa. 373, the conclusion is reached that, notwithstanding the apparent contingency as to survivorship, the estates are vested remainders in fee.

The sheriff's sale of the land converted the estate into personalty, and, having once acquired that character, it must so remain and descend.    Grider v. M'Clay, 11 Serg. & R. 232; Hay's Appeal, 52 Pa. 449; Pennell's Appeal, 20 Pa. 515.

PER CURIAM:

These two appeals were argued together.    They are from the same decree.    The contention arises under the will of Henry Barker, deceased.    The opinion of the learned judge on decreeing distribution contains a correct presentation of the law, and on that opinion the decree is sustained.

Decree affirmed, and the appeals are dismissed at the costs of the respective parties therein.